THE STATE OF OHIO, APPELLEE, *v.* BILLINGSLEY, APPELLANT.

[Cite as *State v. Billingsley,* 133 Ohio St.3d 277, 2012-Ohio-4307.]

*A county prosecuting attorney does not have authority to enter into a plea agreement on behalf of the state for crimes committed wholly outside the county in which the prosecuting attorney has been elected.*

(No. 2011-0827—Submitted May 8, 2012—Decided September 25, 2012.)

APPEAL from the Court of Appeals for Portage County,

Nos. 2010-P-0030 and 2010-P-0031, 2011-Ohio-1586.

_____

SYLLABUS OF THE COURT

A county prosecuting attorney does not have authority to enter into a plea agreement on behalf of the state for crimes committed wholly outside the county in which the prosecuting attorney has been elected.

_____

O'CONNOR, C.J.

{¶ 1} The issue in this appeal is whether a plea agreement between the Summit County prosecuting attorney and appellant, Desmond Billingsley, bound the Portage County prosecuting attorney regarding his prosecution of Billingsley for crimes that he committed wholly in Portage County. We hold that it did not, and therefore, we affirm the judgment of the court of appeals.

I. FACTS AND PROCEDURAL HISTORY

*A. The Summit County case*

{¶ 2} Appellant, Desmond Billingsley, and four codefendants were indicted in Summit County in connection with a string of robberies. The indictment charged at least 24 counts, including two counts of aggravated robbery. The case against Billingsley was resolved by a plea agreement.

**{¶ 3}** Pursuant to Crim.R. 11(F), the details of the agreement were stated on the record at Billingsley's plea hearing. Billingsley agreed to plead guilty to two counts of aggravated robbery with firearm specifications and one count of attempted aggravated robbery. In addition, he agreed to cooperate with the state in the prosecution of his codefendants by providing information about other robberies that law enforcement believed this same group was responsible for committing and by testifying at his codefendants' trials, if necessary.

**{¶ 4}** In exchange, the Summit County prosecuting attorney, acting through Assistant Prosecuting Attorney Becky Doherty, agreed to dismiss the remaining charges contained in the Summit County indictment and to recommend that Billingsley be sentenced to an aggregate term of eight years' imprisonment. Doherty agreed that if Billingsley disclosed additional robberies that were not contained in the indictment, Summit County would not bring additional charges against him based on those crimes. Finally, Doherty represented to the court at the hearing:

> There are potentially other charges from other counties. We have been in contact with those other counties and can say that's our recommendation to him, and they've agreed at least in the other defendants' cases, because we're getting these pleas here and we're resolving the cases here, that they will either not pursue charges on their robberies, or if they have already charged that they'll run concurrent.

**{¶ 5}** Billingsley entered his promised pleas of guilty and cooperated with the authorities to the satisfaction of the Summit County prosecuting attorney. The Summit County prosecuting attorney secured dismissal of the balance of the charges against Billingsley that were contained in the Summit County indictment.

2

The Summit County trial court accepted the plea agreement and sentenced Billingsley to eight years' imprisonment.

*B. The Portage County case*

{¶ 6} Two months later, a grand jury in Portage County charged Billingsley with one count of aggravated robbery with a firearm specification. Eight months later, another grand jury in Portage County charged Billingsley with two additional counts of aggravated robbery with firearm specifications. The cases were later consolidated.

{¶ 7} Billingsley, who was represented by different counsel than he had been during the Summit County prosecution, filed a motion in Portage County to enforce the Summit County plea agreement against "the State of Ohio in Portage County." Billingsley claimed that under the terms of the Summit County plea agreement, he was either immune from prosecution for the activities charged in Portage County or he was entitled to a ruling that any sentence entered in Portage County must run concurrently with the Summit County sentence. Billingsley also argued that he was entitled to outright dismissal of the firearm specifications charged in Portage County because, by operation of law, any sentence for those crimes would run consecutively to the Summit County sentence.

{¶ 8} The Portage County Common Pleas Court held a hearing on the motion. Before testifying himself, Billingsley called two witnesses: Laurence J. Whitney, one of the attorneys who represented him in the Summit County case, and James C. Pasheilich, the Akron Police Department detective who led the investigation of the robberies in Summit County.

{¶ 9} Whitney testified that during the Summit County plea negotiations, Assistant Prosecuting Attorney Doherty told him that the Summit County investigation had revealed that Billingsley had also committed robberies in Portage and Stark Counties. He also testified that as part of discovery, Doherty had turned over a list of more than 30 robberies in which, the prosecuting attorney

believed, Billingsley and his codefendants had participated, including three robberies committed in Portage County. Whitney could not recall whether the robberies later charged in Portage County had been included on the list. The list was not produced as evidence at the hearing on the motion to enforce the plea agreement.

{¶ 10} Whitney further testified that Doherty had told him that she had been in contact with law enforcement in the other jurisdictions and that they were in agreement with the Summit County deal and "if [Billingsley] were charged they would run their time concurrent or they weren't going to charge him. They would clear him by exception." Based on those discussions, Whitney testified, he "felt comfortable that the other jurisdictions would follow suit. They would either not indict or if they would indict, it would be [a] concurrent sentence."

{¶ 11} Whitney said that he did not believe that in general, a prosecuting attorney in one county had authority to bind another county with regard to a plea agreement. On cross-examination, he conceded that he did not know to whom from Portage County Doherty had spoken; he knew only that she had been in contact with "the authorities." Whitney did not think it was necessary to make an independent inquiry of the Portage County prosecuting attorney's office.

{¶ 12} Detective Pasheilich testified, consistently with Whitney, that the list of robberies provided to Whitney included "items in Portage County." He further testified that he had promised to "go to bat for [Billingsley in] any of the other counties if they tried to run cases consecutive" but that he had never promised Billingsley a "pass" for any out-of-county cases. "[W]e never promised anybody that this is what was set in stone. That's not our county, we can't do that."

{¶ 13} The detective also said that he had not had any contact with any prosecuting attorney in Portage County for the purpose of securing authority to make a deal with Billingsley on that county's behalf. And, he testified, Doherty

had never told him that she had contacted Portage County's prosecuting attorney and had never told him that she had secured his authority to make a deal with Billingsley.

{¶ 14} Billingsley testified that he had given information about crimes he had committed in Portage County and that he had done so because he believed it was required of him under the Summit County plea agreement. He explained that he had believed that, in return, he would be sentenced in Summit County and that any charges in "Portage and Stark County would be concurrent or thrown out."

{¶ 15} At the close of Billingsley's presentation of evidence, the court inquired of defense counsel about a subpoena in the record that ordered Doherty to appear at the hearing. The subpoena reflects that it was issued at the request of the defendant. Defense counsel stated, "I don't believe she was subpoenaed by my office." The following dialogue ensued:

> THE COURT: Why would it [the subpoena] be in the Court's file?
>
> [Defense counsel]: I can't explain that.
>
> THE COURT: Doesn't show it was served or anything but neither do the other ones. * * *
>
> [Defense counsel]: Can we approach off the record?
>
> (Discussion had off record.)
>
> THE COURT: Again, I think that it's necessary to have the Prosecutor at the time here. I am going to continue this matter to allow defense counsel to supplement the record with testimony from the Prosecutor.

{¶ 16} When court reconvened more than two weeks later, Billingsley chose not to call Doherty to testify. At the beginning of the hearing, the trial

judge explained, "Today I set a hearing on the supplemental motion to allow the Defendant time to subpoena other witnesses or present other evidence." She then inquired of defense counsel whether he had any other evidence. Defense counsel responded, "Judge, I do not have any other evidence that I wish to present, subject to moving to admit the transcript from the plea hearing."

{¶ 17} Thereafter, the trial court issued a written decision that denied Billingsley's motion because he had failed to prove that the Portage County prosecuting attorney, who was not a party to the agreement, authorized anyone in Summit County to negotiate or contract on his behalf. The trial court emphasized that "no one testified that anyone with authority to bind the Portage County Prosecutor's office ever was aware of the negotiated plea in Summit County."

{¶ 18} Billingsley entered a written plea of no contest to all the charges indicted in Portage County. As a consequence, he was sentenced to 33 years' imprisonment, 8 of which are to be served concurrently with the Summit County sentence.

{¶ 19} The Eleventh District Court of Appeals affirmed. *State v. Billingsley*, 11th Dist. Nos. 2010-P-30 and 2010-P-31, 2011-Ohio-1586. It reasoned that the Portage County prosecuting attorney was not a party to the plea agreement and therefore was not bound by it. It also rejected Billingsley's argument that the Summit County prosecuting attorney had apparent authority as the agent of the state of Ohio to resolve the crimes in Portage County.

{¶ 20} We accepted jurisdiction over Billingsley's discretionary appeal. *State v. Billingsley*, 129 Ohio St.3d 1474, 2011-Ohio-4751, 953 N.E.2d 841.

## II. QUESTION PRESENTED

{¶ 21} The sole proposition of law before us asserts: "The trial court abused its discretion to the prejudice of Appellant by overruling his Motion to Enforce the Criminal Rule 11 plea agreement and Motion to Dismiss Firearm Specifications." We disagree.

### III. ANALYSIS

**{¶ 22}** At the outset, we highlight two significant features of this case. First, Billingsley does not claim that the Portage County charges and the Summit County charges originated from one course of criminal conduct. Therefore, this case does not implicate the Double Jeopardy Clause. *See State v. Urvan*, 4 Ohio App.3d 151, 446 N.E.2d 1161 (8th Dist.1982), paragraph two of the syllabus ("The state may not, either by design or inadvertence, separate charges originating in one 'course of criminal conduct' and pursue them separately in the courts of more than one county even though the venue could be laid in any one of the counties under R.C. 2901.12(H)"), *limited by State v. Mutter*, 14 Ohio App.3d 356, 471 N.E.2d 782 (8th Dist.1983), syllabus ("A defendant who makes separate sales of narcotic drugs on different dates to different persons in different counties can be prosecuted for each sale and may not claim double jeopardy on the basis that it was all one 'course of criminal conduct' ").

**{¶ 23}** Second, Billingsley makes no claim that the Portage County prosecuting attorney was a party to the plea agreement. Instead, he seeks to enforce the plea agreement against the Portage County prosecuting attorney on the theory that the Summit County prosecuting attorney was acting as the state's authorized agent, not just for her county, but for every county in the state and on the theory that the Summit County prosecuting attorney had apparent authority to act as the Portage County prosecuting attorney's authorized agent. In the alternative, he argues that fundamental fairness requires that the plea agreement be enforced in Portage County even if the Summit County prosecuting attorney was not authorized to negotiate on behalf of Portage County.

### A. Plea agreements in general

**{¶ 24}** "Plea agreements are an essential and necessary part of the administration of justice." *State v. Carpenter*, 68 Ohio St.3d 59, 61, 623 N.E.2d 66 (1993), citing *Santobello v. New York*, 404 U.S. 257, 261, 92 S.Ct. 495, 30

L.Ed.2d 427 (1971). " 'This phase of the process of criminal justice, and the adjudicative element inherent in accepting a plea of guilty, must be attended by safeguards to insure the defendant what is reasonably due in the circumstances.' " *Id.*, quoting *Santobello* at 262.

{¶ 25} In felony cases, when a defendant offers a negotiated plea of guilty, "the underlying agreement upon which the plea is based shall be stated on the record in open court." Crim.R. 11(F). Prudence also dictates that a plea agreement be in writing. *See In re Mullen*, 129 Ohio St.3d 417, 2011-Ohio-3361, 953 N.E.2d 302, at ¶ 29 (O'Connor, C.J., dissenting).

{¶ 26} "Principles of contract law are generally applicable to the interpretation and enforcement of plea agreements." *State v. Bethel*, 110 Ohio St.3d 416, 2006-Ohio-4853, 854 N.E.2d 150, ¶ 50. And in contract law, an agent's authority to contract on behalf of its principal is ordinarily limited to the scope of the authority granted by the principal. *See Winpenny v. French*, 18 Ohio St. 469, 474-475 (1869) (explaining that when an agent exceeds its authority, the principal is not bound unless the principal later ratifies the agent's actions). When an agent lacks actual authority, a principal is still bound by the acts of the agent under the theory of apparent authority when

> (1) the principal held the agent out to the public as possessing sufficient authority to embrace the particular act in question, or knowingly permitted him to act as having such authority, and (2) * * * the person dealing with the agent knew of those facts and acting in good faith had reason to believe and did believe that the agent possessed the necessary authority.

*Master Consol. Corp. v. BancOhio Natl. Bank*, 61 Ohio St.3d 570, 575 N.E.2d 817 (1991), syllabus.

**{¶ 27}** With these principles in mind, we turn our attention to Billingsley's arguments, which we address in turn.

*B. Billingsley's arguments*

1. Summit County prosecuting attorney's authority to bind

the state of Ohio, in general

**{¶ 28}** First, Billingsley argues that the Summit County prosecuting attorney is a state employee "who binds the State of Ohio to the terms of its contracts, * * * not merely to Summit County, but * * * to all counties, including Portage County and its prosecutors."

**{¶ 29}** To be sure, a prosecuting attorney has authority to enter into plea agreements on behalf of the state. *State v. Mathews*, 8 Ohio App.3d 145, 146, 456 N.E.2d 539 (10th Dist.1982); *State v. Fulton*, 66 Ohio App.3d 215, 216-217, 583 N.E.2d 1088 (3d Dist.1990); *State v. Woodland*, 8th Dist. No. 84774, 2005-Ohio-1177, at ¶ 27. But the General Assembly provided for the election of a prosecuting attorney in each county. R.C. 309.01. And in prescribing the powers and duties of elected county prosecuting attorneys, the legislature established that they have authority to "inquire into the commission of crimes within the county." R.C. 309.08(A); *see also State ex rel. Finley v. Lodwich*, 137 Ohio St. 329, 29 N.E.2d 959 (1940), paragraph one of the syllabus ("A prosecuting attorney is a county officer whose election is provided for and whose duties are prescribed by statute").

**{¶ 30}** Based on the plain language of R.C. 309.01 and 309.08(A), we conclude that a county prosecuting attorney does not have actual authority to enter into a plea agreement on behalf of the state with respect to crimes committed wholly outside his or her county.

**{¶ 31}** Moreover, nothing in Ohio's statutory scheme even suggests that a county prosecuting attorney can bind the state in a plea agreement for crimes committed wholly in another county. Accordingly, we also easily conclude that a

county prosecuting attorney lacks apparent authority to enter into plea agreements on behalf of the state with respect to crimes committed wholly outside of the prosecuting attorney's county.

**{¶ 32}** Our holding is consistent with the holdings of Ohio's courts of appeals that have addressed this issue. *State v. Barnett*, 124 Ohio App.3d 746, 707 N.E.2d 564 (2d Dist.1998); *State v. Dumas*, 5th Dist. No. 02CA60, 2003-Ohio-4117, at ¶ 26, citing *Barnett. See also State v. Schoolcraft*, 126 Ohio Misc.2d 31, 2002-Ohio-7483, 801 N.E.2d 548, at ¶ 4 (C.P.), quoting *Barnett.*

**{¶ 33}** In *Barnett*, the defendant was indicted in Warren County on five counts relating to the sexual assaults of four children, including his stepdaughter M.W. and his biological daughter B.B. Pursuant to a plea agreement, Barnett entered a plea of no contest to one count of gross sexual imposition against M.W. At the change-of-plea hearing, the parties disclosed the terms of the plea agreement, as required by Crim.R. 11(F). In exchange for Barnett's no-contest plea, the state agreed that no additional charges " 'of any kind, anywhere are going to be filed relating to these children.' " *Barnett* at 748. The trial court accepted the plea agreement, Barnett pleaded no contest, and the court convicted him and sentenced him to 60 days in jail followed by probation.

**{¶ 34}** Thereafter, a Montgomery County grand jury returned a five-count indictment against Barnett that charged gross sexual imposition of M.W. and B.B. Barnett sought dismissal of the indictment based on the plea agreement in Warren County. The trial court granted the dismissal as to the counts involving B.B. but denied it as to the counts involving M.W.[1]

---

1. "The court based this distinction upon evidence in the record suggesting that the Warren County Prosecutor's Office knew about Barnett's alleged sexual activity in Montgomery County with [B.B.] when it entered the plea agreement. Conversely, the trial court found no evidence in the record suggesting that the Warren County Prosecutor's Office knew about Barnett's alleged activity with [M.W.] in Montgomery County. The trial court found this distinction significant because the Warren County plea agreement precluded subsequent prosecution only for criminal conduct about which Warren County prosecutors were aware." *Barnett* at 748-749.

**{¶ 35}** Upon the state's appeal, the Second District reinstated the entire indictment because it concluded that Warren County had no authority to prevent Montgomery County from prosecuting Barnett for crimes allegedly committed in Montgomery County. Focusing on the statutory grant of authority by the state to a county prosecuting attorney, the court of appeals concluded that a county prosecuting attorney lacks both actual and apparent authority to bind another county's prosecuting attorney. In so holding, the court emphasized the "longstanding recognition that a county prosecutor has a duty 'to inquire into commission of crime within his territorial jurisdiction.' " *Barnett*, 124 Ohio App.3d at 754-755, 707 N.E.2d 564, quoting *State v. Nevius*, 77 Ohio App. 161, 177, 66 N.E.2d 243 (2d Dist.1945), *rev'd in part on other grounds,* 147 Ohio St. 263, 71 N.E.2d 258 (1947), and citing R.C. 309.08. And it could "simply find no Ohio statutory law or case law authorizing a county prosecutor to waive prosecution for an offense committed outside his county." *Barnett* at 755.

**{¶ 36}** We find *Barnett* to be persuasive, and we adopt its reasoning. We conclude that the Summit County prosecuting attorney did not have authority to enter into a plea agreement on behalf of the state of Ohio with respect to crimes committed wholly outside of Summit County. Only the Portage County prosecuting attorney has the authority to enter into a plea agreement on behalf of the state with respect to crimes committed wholly within Portage County. Billingsley concedes that the Portage County prosecuting attorney was not a party to Billingsley's plea agreement. Thus, if the Summit County prosecuting attorney did not have the Portage County prosecuting attorney's permission to negotiate on his behalf, the Summit County plea agreement cannot bind the Portage County prosecuting attorney, even if the plea agreement purports to do so.

**{¶ 37}** We must therefore determine whether the Portage County prosecuting attorney authorized the Summit County prosecuting attorney to negotiate on his behalf.

2. Summit County prosecuting attorney lacked authority to
negotiate with Billingsley on behalf of the
Portage County prosecuting attorney

**{¶ 38}** Billingsley does not argue that the Portage County prosecuting attorney, the only person authorized to enter into a plea agreement on behalf of the state with respect to crimes committed wholly in Portage County, actually authorized anyone in Summit County to negotiate on his behalf. Instead, Billingsley contends that the Summit County assistant prosecuting attorney's own words and actions gave her apparent authority to bind the Portage County prosecuting attorney. We easily dispose of this argument because Billingsley proposes a legal impossibility.

**{¶ 39}** As we explained above, an agent cannot through her own words and actions create apparent authority to bind a principal where there is no evidence that the principal permitted the agent to act as if she had authority. *Master Consol. Corp.,* 61 Ohio St.3d 570, 575 N.E.2d 817, at syllabus.

**{¶ 40}** In deciding against Billingsley on the issue of apparent authority, the trial court properly emphasized that "no one testified that anyone with authority to bind the Portage County Prosecutor's office ever was aware of the negotiated plea in Summit County." The fact that there is a complete lack of evidence that the Summit County prosecuting attorney acted with implied authority to resolve the Portage County case means that Billingsley's argument must fail.

3. Fundamental fairness does not require that Portage County
be bound to the agreement

**{¶ 41}** Finally, Billingsley argues that fundamental fairness requires this court to enforce the plea agreement against the Portage County prosecuting attorney even if the Summit County prosecuting attorney was unauthorized to negotiate on his behalf.

### a. Remedies, in general

{¶ 42} A criminal defendant is not entitled to equitable relief to redress an alleged breach of a plea agreement when he possesses adequate legal remedies. *State ex. rel. Seikbert v. Wilkinson*, 69 Ohio St.3d 489, 491, 633 N.E.2d 1128 (1994).

{¶ 43} In *Seikbert*, a prisoner filed a complaint for a writ of mandamus alleging that he was entitled to be released from prison. Seikbert did not allege that his maximum sentence had expired. Rather, he claimed that his plea agreement provided for his release upon completion of the minimum term of imprisonment called for by his indeterminate sentence, which he had completed. For that reason, he sought specific performance of the plea agreement, i.e., release on parole. The trial court granted the state's motion to dismiss for failure to state a claim upon which relief can be granted.

{¶ 44} We affirmed. In doing so, we explained that Seikbert had an adequate legal remedy "by filing a motion with the sentencing court to either withdraw his previous guilty plea pursuant to Crim.R. 32.1 or specifically enforce the agreement." *Id*., 69 Ohio St.3d at 491, 633 N.E.2d 1128, citing *Mathews,* 8 Ohio App.3d 145, 456 N.E.2d 539. We also emphasized that the United States Supreme Court has "refused to hold that the United States Constitution always *requires* specific performance of a plea agreement as the remedy for a broken promise." (Emphasis sic.) *Id.*, citing *Mabry v. Johnson*, 467 U.S. 504, 104 S.Ct. 2543, 81 L.Ed.2d 437 (1984).

{¶ 45} In outlining Seikbert's available remedies, we relied on *Mathews*. In *Mathews*, the defendant entered a no-contest plea to aggravated trafficking in drugs. On appeal, she argued that the trial court had abused its discretion in refusing to conduct a hearing to determine whether police officers had agreed that in exchange for her cooperation, she would not serve time in prison for the drug

offense.  The trial court refused to conduct a hearing, holding that even if such an agreement had been made, it would be unenforceable.

{¶ 46} The court of appeals affirmed and explained that, unless ratified by the prosecuting attorney, "[an unauthorized] plea-bargain agreement is unenforceable and of no effect except upon motion to suppress evidence if wrongfully obtained by promises made during the improper plea bargaining." *Mathews,* 8 Ohio App.3d at 146, 456 N.E.2d 539*; see also Bram v. United States*, 168 U.S. 532, 542-543, 18 S.Ct. 183, 42 L.Ed. 568 (1897) (holding that confessions may not be procured by direct or implied promises).

{¶ 47} *Seikbert* and *Mathews* are squarely on point.

*b. Billingsley's legal remedy*

{¶ 48} Billingsley is not entitled to specific performance by the Portage County prosecuting attorney even if the Summit County agreement unambiguously purported to bind the Portage County prosecuting attorney.  As we have already made clear, the alleged agreement was not authorized by the Portage County prosecuting attorney and therefore is not enforceable against him. *See Barnett*, 124 Ohio App.3d at 756, 707 N.E.2d 564*; see also Mathews* at 146.

{¶ 49} But if, as Billingsley claims, the terms of the Summit County plea agreement purported to bind the Portage County prosecuting attorney, Billingsley's remedy was to withdraw his guilty plea and move to suppress the statements that he made in reliance on the agreement.  *See Mathews* at 146; *see also Bram* at 542-543.  And if his motion to suppress were granted and, as Billingsley claims, the Portage County prosecution was based solely on those statements (and evidence derived therefrom),[2] Billingsley would be entitled to vacation of his conviction.

---

2. The existing record is notably ambiguous in each of these respects.  The transcript of the Summit County guilty-plea hearing arguably reflects that Billingsley was on notice that the Portage County prosecuting attorney had *not* authorized the deal.  Before Billingsley offered his

{¶ 50} But Billingsley did not pursue that remedy. In fact, he and his attorney may have good reasons for not pursuing the available legal remedy, but we do not know, and should not know, his defense strategy at this juncture. We decide only that the fundamental-fairness doctrine does not require that we vacate his Portage County sentence, and, indeed, the law of equity dictates that we do not.

## IV. CONCLUSION

{¶ 51} We hold that a county prosecuting attorney does not have authority to enter into a plea agreement on behalf of the state for crimes committed wholly outside the county in which the prosecuting attorney has been elected. Because the Portage County prosecuting attorney did not grant the Summit County prosecuting attorney authority to bind him as to the prosecution of Billingsley for crimes committed in Portage County, the plea agreement between the Summit County prosecuting attorney and Desmond Billingsley did not preclude the Portage County prosecuting attorney from prosecuting Billingsley for crimes that

---

guilty plea, Doherty cautioned, "There are potentially other charges from other counties." She explained Billingsley's exposure by adding, "at least in other defendants' cases" the other counties had assented to the agreements made in Summit County.

And the record does not necessarily support Billingsley's claim that the Portage County prosecutions were based solely on his statements. The state produced a list of robberies in discovery in the Summit County case. Billingsley apparently claims that the robberies later charged in Portage County were included on the list but, for whatever reason, Billingsley failed to offer the list as evidence. The existence of the list tends to demonstrate that the state possessed evidence that linked him to the Portage County robberies before Billingsley gave any statements, and the Portage County prosecutions therefore could not have been based solely on Billingsley's statements given in reliance on the Summit County plea agreement.

And the record is undeveloped as to what statements Billingsley actually made and whether they, in fact, related to the robberies charged in Portage County. Detective Pasheilich, along with Billingsley's own attorney, could not remember whether Billingsley gave statements about the same robberies later charged in Portage County. And even though Detective Pasheilich testified that he possessed notes from Billingsley's debriefings, Billingsley's counsel made no effort to subpoena the notes, even after the court sua sponte granted a continuance to allow Billingsley to marshal additional evidence.

he committed wholly in Portage County or from asking for consecutive sentences. Therefore, the court of appeals judgment is affirmed.

Judgment affirmed.

PFEIFER, LUNDBERG STRATTON, O'DONNELL, LANZINGER, CUPP, and MCGEE BROWN, JJ., concur.

————————————

Victor V. Vigluicci, Portage County Prosecuting Attorney, and Theresa M. Scahill, Assistant Prosecuting Attorney, for appellee.

Dennis Day Lager, Portage County Public Defender; and John P. Laczko, for appellant.

Carol Hamilton O'Brien, Delaware County Prosecuting Attorney, and Douglas N. Dumolt, Assistant Prosecuting Attorney, urging affirmance for amicus curiae Ohio Prosecuting Attorneys Association.

Timothy Young, Ohio Public Defender, and Jason A. Macke and Stephen A. Goldmeier, Assistant Public Defenders, in support of neither party.

————————————