NOTICE

This slip opinion is subject to formal revision before it is published in an advance sheet of the Ohio Official Reports. Readers are requested to promptly notify the Reporter of Decisions, Supreme Court of Ohio, 65 South Front Street, Columbus, Ohio 43215, of any typographical or other formal errors in the opinion, in order that corrections may be made before the opinion is published.

SLIP OPINION NO. 2021-OHIO-2664

THE STATE EX REL. SCHMITT ET AL. *v.* THE VILLAGE OF BRIDGEPORT ET AL.

**[Until this opinion appears in the Ohio Official Reports advance sheets, it may be cited as *State ex rel. Schmitt v. Bridgeport*, Slip Opinion No. 2021-Ohio-2664.]**

*Mandamus—Writ of mandamus sought to compel a village clerk to certify to a board of elections the sufficiency and validity of an initiative petition or to compel the board of election to place the initiative directly on the November 2021 ballot—Relators failed to establish that they filed the petition with the proper official and thus failed to establish a clear legal right to the relief sought—Writ denied.*

(No. 2021-0878—Submitted July 28, 2021—Decided August 3, 2021.)

IN MANDAMUS.

_____

**Per Curiam.**

**{¶ 1}** Relators, William Schmitt and Dean Michael Barath (collectively, "Schmitt"), seek a writ of mandamus against respondents, the village of Bridgeport,

the clerk of the village, and the mayor of the village (collectively, "village respondents") and the Belmont County Board of Elections.

{¶ 2} Schmitt asks us to compel the village clerk to certify to the elections board the sufficiency and validity of an initiative petition. In the alternative, Schmitt seeks a writ compelling the elections board to place the initiative directly on the November 2021 ballot. He also seeks an award of costs and attorney fees under R.C. 733.61 from the village respondents (but not the elections board). He has filed a motion to establish the amount of security for costs.

{¶ 3} Because Schmitt failed to file the petition with the village clerk, we deny the writ. We also deny the request for attorney fees and costs, and we deny as moot the motion to establish the amount of security for costs.

## I. BACKGROUND
### A. R.C. 731.28

{¶ 4} R.C. 731.28 allows municipal ordinances to be proposed by initiative petition. Before such a petition may be circulated, its proponents must file a certified copy of the proposed ordinance. R.C. 731.32. Then, to qualify the initiative for the ballot, proponents must file the petition containing the valid signatures of no less than 10 percent of the number of electors who voted for governor in the municipality at the most recent general gubernatorial election. R.C. 731.28.

{¶ 5} Crucially for this case, R.C. 731.28 requires the proponents to file the completed petitions with the city auditor or village clerk. That statute provides, "*When a petition is filed with the city auditor or village clerk*, signed by the required number of electors proposing an ordinance or other measure, *such auditor or clerk shall*, after ten days, transmit a certified copy of the text of the proposed ordinance or measure to the board of elections." (Emphasis added.) Bridgeport has no auditor, so Schmitt was required to file with the village clerk.

2

{¶ 6} After the clerk transmits the petition to the elections board, that board has ten days to verify the signatures and return the petition to the clerk with a statement attesting to the number that are valid. R.C. 731.28. If appropriate, the clerk then certifies to the elections board the "sufficiency and validity" of the petition, and the elections board places the initiative on the ballot at the next general election occurring "subsequent to ninety days" after the clerk's certification. *Id.*

### B. Schmitt's Visits to the Village Office

{¶ 7} This case involves a "Sensible Marihuana Ordinance" initiative petition in the village of Bridgeport. The petition seeks to place an initiative on the November 2021 ballot to enact an ordinance limiting the penalty for the possession or cultivation of certain quantities of marijuana or hashish within the village to a fine of $0. In his affidavit, relator Schmitt avers that he was a circulator of the petition.

{¶ 8} Schmitt brought a copy of the proposed ordinance to the Bridgeport Village offices on April 28, 2021. When he inquired about filing a citizen initiative petition, an unknown person directed Schmitt to the mayor's office, and when he arrived at that office, he asked a woman at the desk if she was the "clerk." She responded affirmatively, and after some discussion, she accepted his copy of the proposed ordinance and provided a receipt. Later in that conversation, she clarified that she was merely a "volunteer clerk."

{¶ 9} Schmitt returned to the mayor's office on June 29 seeking to file the petition. According to his affidavit, he was met there by the village mayor and "another unknown woman who held herself out as" the village clerk. He avers that both refused to accept the petition.

{¶ 10} The two women Schmitt spoke with in the mayor's office that day were Norma Teasdale, the village mayor, and Carole Lyle, who avers that she is a volunteer secretary and clerk for the mayor but is not the village clerk. Rather, pursuant to R.C. 733.262, Bridgeport has consolidated the duties of village clerk

and village treasurer into one appointed position called "fiscal officer," whose office is across the hall from the mayor's office. The fiscal officer is Mary Lyle, not Carole Lyle. (The record does not disclose whether the two Lyles are related.) Teasdale and Carole Lyle aver that Teasdale did not refuse to accept Schmitt's petitions on June 29 but stated that she said she needed to speak to legal counsel first. Schmitt left with the petition.

{¶ 11} Schmitt states that later that same day, his Columbus-based attorney telephoned the mayor, who said she would not accept the petition and that Schmitt would have to discuss the matter with the village solicitor. He further states that his attorney telephoned the solicitor on June 29 (and again on June 30 and July 12) but the solicitor did not return the calls. However, Schmitt's affidavit does not explain how Schmitt had personal knowledge of these telephone calls placed by his attorney.

{¶ 12} On June 30, Schmitt, through counsel, sent a "taxpayer demand" letter asking the village solicitor to bring a lawsuit to compel the clerk to accept the petition. He claims that the solicitor neither responded to the letter nor brought the requested lawsuit.

{¶ 13} Schmitt returned to file his petition on July 9, but the office was closed during regular business hours. However, in his brief, Schmitt concedes that the office was legitimately closed for business that day.

{¶ 14} Schmitt returned again on July 12, but he avers that the mayor and the other woman in the office again refused to accept the petition, despite Schmitt's informing them that he had calculated that in order for the initiative to make the November 2021 ballot, the petition had to be filed by July 15. Teasdale and Carole Lyle maintain that Teasdale did not refuse to accept the petition but said she needed

to speak to legal counsel first.[1]  Again, Schmitt took the petition with him when he left.

{¶ 15} On July 16, Schmitt filed this action, seeking a writ of mandamus compelling the village clerk to certify to the elections board the sufficiency and validity of the petition.  In the alternative, he seeks a writ compelling the elections board to place the initiative directly on the November 2021 ballot.  He also seeks costs and attorney fees under R.C. 733.61 due to the village solicitor's failure to bring suit in response to his taxpayer-demand letter.

{¶ 16} On July 17, the mayor called Schmitt and stated that the village would accept the petition if he delivered it.  However, because it was after July 15, Schmitt chose not to file the petition on the advice of counsel.  To date, he has not filed the petition.

## II.  ANALYSIS

### A.  Mandamus Standard

{¶ 17} "To be entitled to a writ of mandamus, a party must establish, by clear and convincing evidence, (1) a clear legal right to the requested relief, (2) a clear legal duty on the part of the respondent to provide it, and (3) the lack of an adequate remedy in the ordinary course of the law."  *State ex rel. Save Your Courthouse Commt. v. Medina*, 157 Ohio St.3d 423, 2019-Ohio-3737, 137 N.E.3d 1118, ¶ 33.

### B.  Schmitt Has Not Established Entitlement to a Writ of Mandamus

{¶ 18} R.C. 731.28 conditions the obligations of the village clerk and board of elections to advance an initiative petition on the proponent's having filed the petition with the village clerk.  The evidence before us establishes that Schmitt

---

1.  In his affidavit, Schmitt provides the URLs for YouTube videos purporting to depict his interactions with Bridgeport officials on April 28, June 29, and July 12.  No party has objected to the videos being accessed in this format or disputed their authenticity, so we conclude that Schmitt's videos may be considered in this case.

attempted to file the petition with Mary Teasdale (the mayor) and Carole Lyle, an unpaid volunteer clerk in the mayor's office. At no point did Schmitt file or attempt to file anything with Mary Lyle, the fiscal officer and village clerk, whose office is separate from the mayor's office. Thus, Schmitt did not comply with the requirement in R.C. 731.28 that he file the signed petition with the village clerk.

{¶ 19} We acknowledge that Schmitt's confusion regarding which office the village clerk was located in stemmed in part from a misunderstanding between Schmitt and the village officials and the officials' lack of awareness about the citizen-initiative process. Nonetheless, Schmitt had an obligation to file the petition with the proper official, and he has not established that he satisfied that obligation.

## C. *Schmitt Has Not Established Entitlement to Costs and Attorney Fees*

{¶ 20} R.C. 733.61 provides that if the court hearing a taxpayer suit

is satisfied that the taxpayer had good cause to believe that his allegations were well founded, or if they are sufficient in law, it shall make such order as the equity of the case demands. In such case the taxpayer shall be allowed his costs, and, if judgment is finally ordered in his favor, he may be allowed, as part of the costs, a reasonable compensation for his attorney.

{¶ 21} Because we do not award judgment in Schmitt's favor, we deny his request for attorney fees. We also conclude that Schmitt did not have good cause to believe his allegations were well founded, for the reasons set forth above. We therefore deny the request for costs. This renders moot the motion to establish security for costs.

6

## III. CONCLUSION

{¶ 22} For the foregoing reasons, we deny the writ. We also deny the request for costs and attorney fees, and we deny as moot the motion to establish the amount of security for costs.

Writ denied.

O'CONNOR, C.J., and KENNEDY, FISCHER, DEWINE, DONNELLY, and STEWART, JJ., concur.

BRUNNER, J., concurs in part and dissents in part, with an opinion.

_____

**BRUNNER, J., concurring in part and dissenting in part.**

{¶ 23} The majority concludes that relator William Schmitt failed to file an initiative petition for a proposed ordinance with respondent Bridgeport Village clerk as required by statute and that relators, Schmitt and Dean Michael Barath, would not be entitled to relief even if the proposed ordinance had been filed according to statute. It is from these decisions that I respectfully dissent. I agree that relators' requests for (1) an order for the village clerk to immediately certify the sufficiency and validity of the initiative petition to respondent Belmont County Board of Elections for placement on the November ballot and (2) an order for the board to place the proposed ordinance directly on that ballot go beyond the legal duties imposed upon the village clerk, the board, and respondents, the village and the mayor of the village, and thus I agree that relators are not entitled to a writ of mandamus against respondents on those bases. However, I do believe that relators are entitled to a limited writ against the village clerk under their request for other relief that this court might find appropriate.

{¶ 24} That Schmitt did not file his paperwork with the correct village official is the basis for the majority's denial of relators' request for a writ of mandamus and ultimately, relators' access to the ballot. I believe, based on my review of the video evidence presented by relators, that it is indisputable that the

village of Bridgeport persistently misled Schmitt and stonewalled his attempts to properly file paperwork, and I would not reward that behavior by denying any relief. Rather, I would grant relators a limited writ ordering the village clerk (1) to ratify acceptance of the proposed ordinance under R.C. 731.32 and (2) to accept the part petitions containing signatures and then discharge her duties under R.C. 731.28.

{¶ 25} The majority adequately acknowledges and recounts some of the evidence filed in this case, and I will not repeat those facts here. However, missing from the majority's analysis is a crucial item that gives context to the averments submitted by the parties—video of what happened when Schmitt visited the Bridgeport municipal building on April 28, June 29, and July 12, 2021.[2]

{¶ 26} During Schmitt's first visit to the Bridgeport village offices, on April 28, he sought to "file a certified copy of the proposed ordinance" with the village clerk as required by R.C. 731.32. Video taken by Schmitt, posted on YouTube by Schmitt, and referenced in Schmitt's affidavit, which has been filed as evidence in this case with the clerk of this court, shows that when Schmitt entered the building, the following exchange occurred:

| | |
|---|---|
| Schmitt: | "Hello, ma'am. Is the village clerk in today?" |
| Unknown Female: | "What?" |
| Schmitt: | "The village clerk in today?" |
| Unknown Female: | "Mayor's Office." |
| Schmitt: | "In the mayor's office? Oh, okay." |

Schmitt turned to face the door of the mayor's office but, before he even entered that office, he apparently saw another person (in an affidavit filed as part of

2. April 28 https://youtu.be/ss6pyWqO6GQ, June 29 (according to the affidavits it is the 29th but the video title suggests it is the 28th) https://youtu.be/u9dh4V_5_fc, and July 12 https://youtu.be/2buMLPyLlR8.

Bridgeport's evidence, Carole Lyle admits that she was the person Schmitt encountered).  This exchange then occurred:

Schmitt:  "Yes, I got a citizen's initiative petition I need to turn in.  Are you the clerk?"

Lyle:  "Yes."

Schmitt:  "Oh, okay.  Good."

{¶ 27} Schmitt then entered the office and began to explain how the initiative-petition-process works, to which Lyle responded that she thought that the mayor should be the one to accept the documents.  Schmitt stated that, as a matter of law, he was "supposed to turn it in to a village clerk."  Lyle then expressed the opinion that the ordinance would have to go to council.  Schmitt again attempted to explain, and Lyle responded that before she accepted it, she wanted to talk to the village solicitor to make sure that she was the one to do what was asked of her.  The two then discussed how the full initiative process works and what the proposed ordinance's purpose was.  At the end of that explanation, Lyle signed the receipt to indicate acceptance and handed it back to Schmitt.

{¶ 28} Immediately after signing to indicate receipt and acceptance of the certified copy of the proposed ordinance and handing the receipt to Schmitt, Lyle told Schmitt, "Yeah, cause I'm just a volunteer clerk.  So I don't really hold any power."  To which Schmitt responded, "Yeah, yeah.  And I mean, really, honestly, that's all you do.  And if you wouldn't have accepted it I would have just put it in the drop box outside because I video recorded, um, and really all we—this is just proof that we turned in the petition before we started collecting signatures."  Then Lyle asked some further questions about how the process worked and Schmitt offered further explanation.  At the end of that discussion, the conversation concluded:

Lyle:  "I'll just accept it and that's it."

Schmitt:     "All right.  Well, I do appreciate your time very much.  Thank you very much."

{¶ 29} On June 29, 2021, Schmitt returned to the same office with signed part petitions to file with the village clerk in compliance with R.C. 731.28, and again he made a video record of what transpired.  Upon entering the doorway of the office, Schmitt explained that he was there to turn in 14 part petitions containing signatures for submission and validation by the board of elections for the initiative he had filed some weeks before.  An occupant of the office that day (either Carole Lyle or the mayor, Norma Teasdale) interrupted to state, "I'm not signing any petition whatsoever."  She then questioned why Schmitt did not just take the petitions directly to the board of elections.  Schmitt responded that this was not the process prescribed by the Ohio Revised Code and encouraged her to contact the board of elections or Schmitt's attorney if she had any questions about the process.

{¶ 30} After some further discussion about the substantive purpose of the petition (to decriminalize marijuana) she asked if before accepting the petitions she could contact the village solicitor.  Schmitt agreed that this was fine but noted that the matter was time sensitive.  She promised to contact the solicitor that day and to follow up with Schmitt.  Schmitt said that would be "perfectly fine," noting that local governments often have questions about this because not many people know that citizens can change the law themselves.  She then took his information and promised to get back to him by Wednesday (which would have been June 30).  Schmitt responded at that point that he was happy to have her contact the village solicitor but would appreciate a response by the next day.  He also argued for the reasonableness of that request by noting that, technically, he had proof of attempting to submit the petitions in the form of the video he was recording and that all he really had to do was leave them on the counter.  At that point, she committed to contact Schmitt the following day:

Schmitt:          "But like I said, it is time sensitive—"

| Teasdale or Lyle: | "I understand that." |
| Schmitt: | "—so if you could get back to me by tomorrow, sometime?" |
| Teasdale or Lyle: | "Yeah." |
| Schmitt: | "Could we do that please?" |
| Teasdale or Lyle: | "Yes." |

{¶ 31} But no one from Bridgeport contacted Schmitt or his attorney the next day, or any day, in fact, until after this action was filed, despite attempts by Schmitt's counsel to contact the village solicitor directly.

{¶ 32} On July 12, 2021, Schmitt returned to the same office to which he had been directed on April 28, 2021, when he stated that he was looking for the village clerk. He again encountered Carole Lyle (who had previously stated that she was the clerk or a volunteer clerk) and the mayor, Norma Teasdale. Schmitt indicated that he was once again asking if they would accept the part petitions. Teasdale responded, "Oh, that has to go through my—our solicitor. He has not gotten back to me. They were * * *—out of town last week." Schmitt then explained that when he left a message at the solicitor's office on his machine, he was informed that the solicitor would get back to him after the Fourth-of-July weekend, but that he had not done so so far. Teasdale then reiterated that she had not heard from him: "Okay, they were on vacation and I haven't talked to him since—and our phones err—we just got a new phone system. They're not working. I just got done talking to the company about our phones. I can't even call the solicitor yet until they come back to me and tell me that our phones are correct. So, I—up until that time whenever he tells me what to do."

{¶ 33} Schmitt then stated, "Okay. Well, I've felt I've given you guys adequate time." Teasdale responded, "I'm sorry, I can't do anything without talking to the solicitor." Schmitt then asked, "Was she [indicating Lyle] the lady that I turned in the paperwork to the first time?" Teasdale then said, "I don't think

you turned in anything." Then she asked Lyle, "Did he turn in anything." "Just a request, I think it was," responded Lyle. "Yeah," Schmitt reminded her, "you signed the paper and then I left you a petition." "And we sent it to the solicitor," Lyle added, "so, I don't want to be involved in it." Schmitt then said that he did not want to take the village to court. Mayor Teasdale said she understood and was not trying to be "nasty or anything," but that she would not take any action until told to do so by the solicitor.

{¶ 34} Schmitt then asked for Lyle's name. Lyle refused to give it, asking, "What do you need my name for?" When Schmitt tried to explain that it was for court purposes, the mayor excused the refusal, saying, "She's just a volunteer. She has nothing to do with the village itself." Teasdale again asked, "Did he turn in paperwork? I didn't think he turned anything in outside of talking to you." This time, in conformity with what the mayor had said, Lyle stated, "I don't know. I don't know. It was so hectic that day when he came in." "Yeah," the mayor added, "we had a big meeting going off at the same time." Schmitt responded, "Yeah, you guys had a lot in and that's why I had her sign the paper that she received the petition, left it here, and then I went and collected the signatures." Teasdale again insisted, "I don't recall that petition being left."

{¶ 35} Again citing the solicitor's vacation, noting the recent holiday, adding the fact that no one in the village works on Friday, mentioning the solicitor's court schedule, and volunteering that she had a funeral to go to, Teasdale indicated that it was unlikely she would know anything further until Wednesday or Thursday (the 14th or 15th of July). Schmitt indicated that if that was the case and relators were unsuccessful in getting in contact with the village solicitor to resolve things, the matter would likely be resolved in court. The conversation thereafter ended cordially.

{¶ 36} When relators received no further contact from the village, they filed this action on Friday, July 16, 2021. Only after that, on Saturday, July 17, did the

village mayor contact Schmitt and tell him that the petition and signatures would be accepted.

{¶ 37} The majority takes the position that Schmitt filed his paperwork with the wrong person and, for that reason, he is not entitled to relief. It is apparently true that Carole Lyle was not the village clerk. Bridgeport has no village clerk or clerk's office, only a fiscal officer (Mary Lyle[3]) who performs the duties of clerk, as permitted by R.C. 733.262(A). So it may be true that Schmitt handed his initiative petition to the wrong person and thereafter tried to get the wrong person to accept the part petitions with signatures, but what happened to Schmitt was not a problem of his making by any stretch. Both of these two public servants, the mayor and the volunteer clerk, were informed that Schmitt was trying to file an initiative petition to place an issue on the ballot. Either or both of them could have directed him to the village fiscal officer in this small village where the officers were housed in the same building. They did not do so. Instead, they made excuses, with one even attempting to deny what happened on April 28 when Schmitt had filed, and Lyle had accepted, the certified copy of the proposed ordinance. Denying a writ of mandamus to disqualify the petition on a technicality created by village officials rewards ignorance at best and malfeasance at worse.

{¶ 38} I would hold that by installing Carole Lyle in the municipal building, by permitting her to refer to herself as the clerk, and by not correcting the representation that she was the clerk in the building, Bridgeport and the mayor of Bridgeport clothed her with apparent authority to accept the certified copy of the proposed ordinance, enabling Schmitt to begin collecting signatures. *See State v. Billingsley*, 133 Ohio St.3d 277, 2012-Ohio-4307, 978 N.E.2d 135, ¶ 26, quoting *Master Consol. Corp. v. BancOhio Natl. Bank*, 61 Ohio St.3d 570, 575 N.E.2d 817 (1991), syllabus ("a principal is still bound by the acts of the agent under the theory

---

3. As the majority notes, it is unclear from the record whether Mary Lyle is any relation to Carole Lyle.

of apparent authority when (1) 'the principal held the agent out to the public as possessing sufficient authority to embrace the particular act in question, or knowingly permitted him to act as having such authority, and (2) * * * the person dealing with the agent knew of those facts and acting in good faith had reason to believe and did believe that the agent possessed the necessary authority' " [ellipsis added in *Billingsley*]).

{¶ 39} Once Schmitt cleared the hurdle of R.C. 731.32, the village clerk (or fiscal officer) had the duty to fulfill her responsibilities under R.C. 731.28. That relators also seek "such other relief as in the Court's judgment may be appropriate" permits this court to issue a limited writ of mandamus ordering the village clerk (1) to ratify her acceptance of the proposed ordinance under R.C. 731.32 and (2) to accept the part petitions containing signatures and then discharge its duties under R.C. 731.28. The village clerk is required to then transmit the part petitions to the Belmont County Board of Elections to examine the signatures. After the board does so, it must return the petition to the fiscal officer to certify the sufficiency and validity of the petition and transmit the petition to the board to be placed on the ballot.

{¶ 40} As for the remainder of relators' complaint for relief, I agree with the majority that relators are not entitled to the specific writs of mandamus that they have requested because they seek more relief than they are now entitled to under the law. For the reasons stated, relators are not entitled to the requested order requiring (1) "Respondent-Clerk of the Village of Bridgeport to immediately certify the sufficiency and validity of the Initiative to Respondent-Board of Elections for placement on the November 2, 2021 election ballot" or (2) "directing Respondent-Belmont Board of Elections to timely place the Initiative on the November 2, 2021 election ballot." R.C. 731.28 and 731.32 does not permit us, as the majority notes, to short-circuit or rewrite the statutory process that is intended to ensure that a petition contains the requisite number of signatures required to reach the ballot.

{¶ 41} This court should recognize the cloak of apparent authority that the village permitted Carole Lyle to wear in accepting the certified copy of the proposed ordinance and issue a writ of mandamus ordering the village clerk to immediately and timely comply with her legal duties under R.C. 731.28. I would not reward the evasive and unacceptable conduct by the village officials in this case. By refusing to issue a writ, the majority permits an Ohio municipality to deny voters the right to self-governance and allows officials who have sworn to do their duty to their village to thwart those and the village voters' rights. Insofar as the majority does not take the actions I have described, I respectfully dissent.

{¶ 42} The majority declines to issue a writ with respect to the Belmont County Board of Elections, and I concur in that decision. To the extent that this dissent were to be the majority opinion of the court, I would award fees and costs to relators.

―――――――――――

Mark R. Brown, for relators.

Isaac, Wiles & Burkholder, L.L.C., Mark Landes, Donald C. Brey, and C. Awele Nwajei, for respondents the village of Bridgeport, the mayor of village of Bridgeport, and the clerk of village of Bridgeport.

J. Kevin Flanagan, Belmont County Prosecuting Attorney, and David K. Liberati, Assistant Prosecuting Attorney, for respondent Belmont County Board of Elections.

―――――――――――