[Cite as *State v. Gunther*, 2024-Ohio-1848.]

# IN THE COURT OF APPEALS OF OHIO
## THIRD APPELLATE DISTRICT
## HENRY COUNTY

STATE OF OHIO,

    PLAINTIFF-APPELLANT,

    v.

MICAH GUNTHER,

    DEFENDANT-APPELLEE.

CASE NO. 7-23-08

O P I N I O N

---

**Appeal from Henry County Common Pleas Court**
**Trial Court No. 21CR044**

**Judgment Reversed and Cause Remanded**

**Date of Decision:  May 13, 2024**

---

APPEARANCES:

    *Gwen Howe-Gebers* **for Appellant**

    *Joseph C. Patituce* **for Appellee**

**ZIMMERMAN, J.**

{¶1} Plaintiff-appellant, the State of Ohio, appeals the July 10, 2023 judgment of the Henry County Court of Common Pleas dismissing the criminal indictment against defendant-appellee, Micah Gunther ("Gunther"). For the reasons that follow, we reverse.

{¶2} This case stems from a years-long federal and state investigation of a criminal-drug-trafficking enterprise, which culminated in the indictment of 12 individuals—including Gunther and his co-defendant, Tyler Addiego ("Addiego"). (*See* App. Case No. 7-23-09). Gunther and Addiego, residents of California, were alleged to have engaged in a criminal-drug-trafficking enterprise that intersected through Henry County, Ohio. According to the State, Gunther and Addiego orchestrated the members of the criminal-drug-trafficking enterprise to travel to Indiana through Henry County to facilitate the delivery of drugs or currency on behalf of the enterprise. The State alleged that Gunther collaborated with Brian Ochs ("Ochs")—a cooperating witness of the State—in the criminal-drug-trafficking enterprise in which Gunther and Ochs coordinated the activities of the enterprise, including the supply and distribution of marijuana and the return of the drug proceeds from Ohio to California. The State further alleged that, as part of the criminal-drug-trafficking enterprise, Gunther directed Addiego to Toledo to assist with Gunther's drug-trafficking activities to monitor Ochs.

{¶3} On March 24, 2021, the Henry County Grand Jury indicted Gunther on a single count of engaging in a pattern of corrupt activing in violation of R.C. 2923.32(A)(1), a second-degree felony.  In addition to Gunther and Addiego, the Henry County Grand Jury also indicted Derek Goeckerman ("Goeckerman"), Lorn Justice ("Justice"), Dustin Hall ("Hall"), Christopher Seacott ("Seacott"), Khalid Nasirdeen ("Nasirdeen"), Ian Hoffman ("Hoffman"), Nathan Mowery ("Mowery"), Michael Waldvogel ("Waldvogel"), Michael Schrickel ("Schrickel"), and Aaron Ivory ("Ivory").  Ochs and another cooperating witness for the State, Yousef Mahmoud ("Mahmoud"), were not indicted.

{¶4} Gunther appeared for arraignment on April 19, 2021 and entered a plea of not guilty.  That same day, Gunther filed a demand for discovery in the trial court along with a discovery acknowledgement indicating that he received a "cd/dvd" marked "counsel only."  (Doc. No. 15).

{¶5} On February 11, 2022, Gunther filed a motion in the trial court to sever his case from Addiego's case for purposes of trial, which the trial court denied on March 2, 2022.

{¶6} On March 8, 2022, Gunther filed a motion requesting that "the State reveal any agreement entered into between the State and any prosecution witness." (Doc. No. 40).  That same day, Gunther also filed a motion for a more specific bill of particulars.  On March 11, 2022, the trial court ordered the State to "produce all

statements made by any codefendant or member of the Enterprise as well as [confidential informants]." (Doc. No. 42).

{¶7} Alleging that the State had not yet complied with the trial court's March 11, 2022 discovery order, Gunther filed motions on August 18, 2022 to compel the State to (1) "disclose the identity, existence, and substance of agreements, promises of immunity, lenience, or non-prosecution agreements entered into between the State and any witness or defendant" and (2) "provide all evidence in this case, including evidence related to impeachment of the State's witnesses" because Gunther "inquired into the leniency and deference given to Mr. Ochs and the reason he is not indicted alongside the Defendants in this matter" with no response from the State. (Doc. Nos. 53, 54). Gunther also filed a motion that day requesting that the trial court sanction the State for its failure to comply with the discovery requests.

{¶8} On September 8, 2022, the State responded that it "provided the plea papers of those co-defendants who may be testifying on behalf of the State of Ohio at trial * * * ." (Doc. No. 57). In that response, the State further asserted that it "provided information recently received from the DEA concerning potential 'other acts' information of another cooperating witness." (*Id.*).

{¶9} Following a hearing, the trial court on September 22, 2022 granted Gunther's motions to compel and ordered the State to disclose the evidence "on or before October 10, 2022." (Doc. No. 70). In the same entry, the trial court denied Gunther's motion for sanctions since "the State has not been dilatory in complying

with the Criminal Rules in light of the substantial amount of discovery time in this case" even though "certain material which [Gunther] was entitled to has not been provided." (*Id.*).

{¶10} On September 12, 2022, Gunther filed a motion requesting that the trial court disclose the grand jury testimony relative to his indicted case. On September 19, 2022, the State filed a memorandum in opposition to Gunther's motion requesting that the trial court disclose the grand jury testimony. After Gunther filed a reply to the State's memorandum in opposition to his motion requesting that the trial court disclose the grand jury testimony, the trial court denied Gunther's motion on October 12, 2022.

{¶11} On September 15, 2022, Gunther filed a motion to continue a September 19, 2022 hearing, arguing that the State was deficient in its discovery responses. (*See* Doc. No. 60). Likewise, the State filed a motion to continue the September 19, 2022 hearing, contending that it required additional time "to discuss the motions with the Agents on the cases to determine if the information complained of has been provided, is even available or how to respond." (Doc. No. 63).

{¶12} On September 16, 2022, Gunther filed a motion to dismiss the case, arguing that the State failed to disclose "all statements, text messages and handwritten notes made by the cooperating witness [Ochs] and the [confidential informant] as previously ordered by" the trial court. (Doc. No. 64). The State filed its memorandum in opposition to Gunther's motion to dismiss on September 19,

2022 in which the State refuted Gunther's contention that it did not provide discovery relating to Ochs or any other confidential informants. After concluding that the State "sufficiently addressed concerns regarding discovery," the trial court denied Gunther's motion to dismiss on October 12, 2022. (Doc. No. 77).

{¶13} On September 26, 2022, the State filed a motion requesting that trial court authorize it to withhold the identities of confidential sources under Crim.R. 16(D) "until the State determines that this person is a necessary witness for trial." (Doc. No. 71). On September 27, 2022, the trial court ordered "that the Confidential Sources be available for interview outside the presence of agents on or before October 10, 2022" but permitted the State to withhold "the present location, address, and phone numbers of the informants." (Doc. No. 72). Notwithstanding the trial court's order, according to the State, "[n]o such attempt to interview the confidential informants took place." (Doc. No. 151).

{¶14} The State filed a supplemental discovery response on October 7, 2022. (*See* Doc. No. 74).

{¶15} On October 19, 2022, Gunther filed a motion requesting that the trial court disqualify the prosecutor from further participation in the case, alleging that the prosecutor "lied directly to [the trial] court or Brian Ochs and multiple DEA Agents are lying" to the trial court. (Doc. No. 79). That same day, Gunther filed a motion to dismiss the case based on prosecutorial misconduct. (*See* Doc. No. 81).

{¶16} On October 25, 2022, Gunther filed a motion to compel the State to disclose information related to Nasirdeen, a confidential informant and "indicted co-defendant who has entered a guilty plea and is waiting [sic] sentencing * * *, which was not previously disclosed to the defense * * * ." (Doc. No. 85).

{¶17} On October 26, 2022, Gunther filed a motion requesting that the trial court sanction the State for failing to reveal whether Ochs received any benefit from the State in exchange for his testimony.

{¶18} On October 27, 2022, the State filed a memorandum in opposition to Gunther's motions to disqualify the prosecutor and for sanctions, and his motion to dismiss in which the State represented that it provided Gunther "reports when co-defendants or cooperating witnesses make statements in any proffers" and that it "provided well into the thousands of pages of discovery to" Gunther. (Doc. No. 87). The State further asserted that "[t]he extrapolations, innuendos, inaccurate portrayal of discovery items, and blatant misrepresentations [are] an attempt by [Gunther] to paint the State of Ohio and its agents as those who wholly disregard the criminal justice system and would place their reputations in jeopardy for the likes of the defendants" (*Id.*). The State filed a supplemental memorandum (in opposition to Gunther's motions) on November 17, 2022 in which the State further refuted Gunther's allegations that the State failed to provide "reports when co-defendants or cooperating witnesses make statements in any proffers." (Doc. No. 88). Specifically, the State detailed that it disclosed information related to

Nasirdeen, "provided copies of the plea documents" "[a]s to other cooperating co-defendants," and informed Gunther that even though "no promises have been to [sic] Ochs," Ochs "understands that his continued cooperation will determine what any outcome will be." (*Id.*).

{¶19} Also on November 18, 2022, Gunther filed a motion requesting that the trial court sanction the State for failing to disclose evidence related to Ochs and its confidential informants. Specifically, Gunther requested that the trial court sanction the State by dismissing the case or disqualifying the prosecutor. On November 21, 2022, the State filed a memorandum in opposition to Gunther's motion.

{¶20} On December 16, 2022, Gunther filed a demand for a bill of particulars "providing with specificity the nature of the offense charged **and** the *conduct of the defendant alleged to constitute the offense*." (Emphasis sic.) (Doc. No. 92). The State provided a "more specific Bill of Particulars * * * on March 23, 2023." (Doc. No. 151). (*See also* Doc. No. 138).

{¶21} Following a October 31, 2022 hearing, the trial court on December 22, 2022 denied Gunther's motions to disqualify the prosecutor, for sanctions, to dismiss, and to compel after concluding that the prosecutor did not lie to the trial court and that "any benefit Brian Ochs receives by testifying is a matter that must be addressed at the jury trial." (Doc. No. 93). Importantly, the trial court determined that, "[s]hould [Gunther] believe there is discoverable information not included in

a previous disclosure, he must first send a written request for the information to the State prior to seeking a Motion to Compel and Sanctions" because the trial court "does not have legal authority to dismiss a criminal case prior to trial on discovery ground [sic] due to the State's continuing duty to provide discovery." (*Id.*). That same day, the trial court ordered that "no motion to compel shall be accepted unless it comes attached with written evidence that the party previously requested the information from opposing counsel." (Doc. No. 94).

{¶22} Gunther filed a renewed motion on November 18, 2022 to compel the State "to provide all evidence related to the confidential informants and the State's star witness, Brian Ochs." (Doc. No. 89).

{¶23} Ultimately, the trial court issued an order on April 5, 2023 prohibiting the State from introducing "the discovery provided to [Gunther] on April 3, 2023" because "[i]t was obtained to [sic] close to the trial date and its admission would be prejudicial to [Gunther]." (Doc. No. 105). The State filed a motion on April 14, 2023 requesting that the trial court reconsider its decision "to not allow the substitution of a document witness," which the trial court denied that same day. (Doc. No. 110).

{¶24} On April 10, 2023, Gunther filed a motion requesting that the trial court order the State "to produce a written summary of any oral statement made by a co-defendant, all notes written by law enforcement about the same, or in the alternative to exclude those witnesses from testifying." (Doc. No. 108). The State

filed memoranda in opposition to Gunther's motion on April 11 and 14, 2023, respectively, in which the State requested that the trial court "deny defendant's request for production of trial preparation notes of potential witnesses" since "Crim.R. 16 does not require the State to provide 'work product' trial preparation, including those of co-defendants, to defense counsel." (Doc. No. 109). The trial court denied Gunther's motion on April 14, 2023.

{¶25} Further, in its April 14, 2023 entry, the trial court concluded that the State untimely provided Gunther the plea agreements of four co-defendants (Mowrey, Justice, Goeckerman, and Nasirdeen). Consequently, the trial court excluded those witnesses from testifying at trial. Likewise, the trial court excluded the testimony of two unindicted co-conspirators (Ashley Olszewski-Ivory and Eric Goble) since their "proffers should have been obtained and disclosed prior to" April 13, 2023. (Doc. No. 112). Finally, the trial court permitted the testimony of 14 additional unindicted co-conspirators (Ochs, Mahmoud, Robert Shiekh, Aaron Zombo, Brian Hahn, James Henderson, Jennifer Anderson, Andrew Noss, Matt Brodbeck, Donald Christie, Shane Christie, David Wood, Zachary Shank, and David Willegas) after the State "indicated that none of [those] individuals have any agreement, understanding or expectation of consideration from the government in exchange for their testimony." (*Id.*).

{¶26} On April 18, 2023, the trial court issued a judgment entry vacating the April 24, 2023 trial date after determining that "information contained in [BCI

Confidential Source] packets raised significant concerns that the State has not complied with Crim.R. 16 and with the prior orders of the [trial court] particularly in regards to consideration Mr. Brian Ochs has or expects to receive from the government in exchanged [sic] for his testimony." (Doc. No. 115).

{¶27} The State filed its notice of appeal on April 24, 2023 from the trial court's April 5, 14, and 18, 2023 judgment entries. Thereafter, this court dismissed the State's appeal on May 31, 2023 after concluding that "there is no discretionary appeal available * * * ." (Doc. No. 150).

{¶28} On April 21, 2023, the State filed additional discovery responses, which had previously been recorded on an electronic-discovery portal known as Matrix. (*See* Doc. Nos. 116, 119-141); (Doc. No. 134, Ex. L). That same day, the State filed a certification of nondisclosure under Civ.R. 16(D). (*See* Doc. No. 117).

{¶29} On April 24, 2023, Gunther filed a motion to dismiss the "case with prejudice as a result of the State's willful and intentional violations of the Ohio Constitution, United States Constitution, Rules of Criminal Procedure, Rules of Evidence, and Rules of Professional Conduct." (Doc. No. 145). Specifically, Gunther alleged that "Brian Ochs and Yousef Mohammad [sic] have been formal BCI informants since January 2020 working and cooperating with the government in exchange for consideration on their pending charges" but that he has not "been provided discovery outlining what the 'pending charges' are * * * ." (*Id.*). Gunther alleged that, notwithstanding the State's statements to the contrary, the State

provided documents "related to Brian Ochs and Yousef Mohammed [sic], [which] state in pertinent part that '[t]he [confidential source] *has pending charges* and is providing services and information in consideration of those charges.'" (Emphasis sic.) (*Id.*, quoting Doc. No. 115, Exs. A, B).

{¶30} Even though Gunther previously waived his right to a speedy trial, Gunther revoked that waiver on May 12, 2023.

{¶31} On June 6, 2023, the State filed a memorandum in opposition to Gunther's motion to dismiss in which the State countered that, notwithstanding the trial court's order to provide the information in April 2023, it provided "two documents * * * titled, 'Completed Mahmoud BCI CS Establishment Packet Provided on 4-17-22' and 'Completed Ochs BCI CS Establishment Packet Provided on 4-17-22'" on April 17, 2022. (Doc. No. 151). According to the State, while it did not have any formal agreements with Ochs or Mahmoud, it was "not denying that consideration will be made as it relates to the prosecution of Ochs, Mahmoud and cooperating witnesses" and that such information "was clearly documented in the Confidential Source establishment packet." (*Id.*). However, the State put forth that it was its "position there [were] no agreements made with either confidential source" and that the BCI Confidential Source packet materials "indicate the standard form language 'CS has pending charges and is providing services and information in consideration of those charges.'" (*Id.*). In sum, the State represented that "[t]here are no filed charges against either of these sources regarding the matter in which

they are testifying" and that "they will testify that there is 'hope' but no formal agreements have been made with them," which "[e]ven *if* * * * considered an 'agreement,' it only adds to the cumulative nature of cross examination material available to the defense." (Emphasis sic.) (*Id.*). Gunther filed his reply to the State's memorandum in opposition to his motion to dismiss on June 23, 2023.

{¶32} On July 10, 2023, the trial court granted Gunther's motion to dismiss after concluding that "there have been willful Crim.R. 16 violations in this case." (Doc. No. 156). In particular, the trial court resolved that "the least severe sanction that is consistent with the purpose of the rules of discovery" is dismissal of the case because the trial court "issued multiple orders to compel discovery, * * * excluded witnesses from testifying and * * * continued the case multiple times" but "Crim.R. 16 violations have continued to occur." (*Id.*). Importantly, the trial court determined that the State's representations regarding the BCI Confidential Source packet materials were disingenuous. Specifically, the trial court concluded that, notwithstanding the State's contention that it did not have any formal agreement with Ochs or Mahmoud, it could not "interpret [the BCI Confidential Source packet materials] any other way than what it explicitly says, that Brian Ochs and Yousef Mahmoud are providing services and information in consideration of pending charges." (*Id.*). Further, the trial court reasoned that the "blank or whited out documents [are] missing more than signatures" even though "[t]he State argue[d]

-13-

that [they] are simply blank copies of the Ohio BCI Confidential Source documents

* * * ." (*Id.*).

**{¶33}** On July 11, 2023, the State filed its notice of appeal from the trial court's July 10, 2023 judgment entry dismissing the indictment against Gunther. It raises one assignment of error for our review.

**Assignment of Error**

**The Trial Court Erred And Abused Its Discretion In Dismissing The Indictment.**

**{¶34}** In its sole assignment of error, the State argues that the trial court abused its discretion by dismissing the indictment in this case. Specifically, the State contends that the trial court unreasonably, arbitrarily, and unconscionably concluded that any Crim.R. 16 violation was willful because "the information was known by the defense from numerous discovery responses and [because Gunther] could not demonstrate how it truly prejudiced [him]." (Appellant's Brief at 27).

*Standard of Review*

**{¶35}** This court reviews "a trial court's decision on a motion to dismiss an indictment for abuse of discretion." *State v. Hudson*, 169 Ohio St.3d 216, 2022-Ohio-1435, ¶ 19. An abuse of discretion suggests that a decision is unreasonable, arbitrary, or unconscionable. *State v. Adams*, 62 Ohio St.2d 151, 157-158 (1980).

*Analysis*

**{¶36}** In this case, the trial court granted Gunther's motion to dismiss after concluding that the State willfully violated Crim.R. 16 by failing to timely disclose the information in the BCI Confidential Source packet materials. Specifically, the trial court concluded that the State failed to timely disclose "letters indicating that the CS (Briah Ochs and Yousef Mahmoud) have pending charges and are providing services in consideration of those charges" as ordered by the trial court "on March 7, 2022, September 27, 2022, and December 22, 2022 * * * ." (Doc. No. 156). The trial court resolved "that the undisclosed material would have materially benefitted the accused in the preparation of his defense and further [found] that [Gunther] was prejudiced by the State's failure to disclose this information." (*Id.*). That is, the trial court determined that "[t]he veracity of their statements and any consideration they have received for their testimony is absolutely material to [Gunther's] ability to mount his defense." (*Id.*). In sum, the trial court determined that "the least severe sanction that is consistent with the purpose of the rules of discovery" is dismissal because the trial court was "concerned that if this case, which has been pending for over two years, is reset for another jury trial more vital discovery will surface on the eve of or even after the trial." (*Id.*).

**{¶37}** Crim.R. 16 provides the discovery rules for criminal proceedings. *State v. Engle,* 166 Ohio App.3d 262, 2006-Ohio-1884, ¶ 7 (3d Dist.). Generally, "[t]he United States Supreme Court has held that 'the suppression by the

prosecution of evidence favorable to an accused upon request violates due process where the evidence is material either to guilt or to punishment, irrespective of the good faith or bad faith of the prosecution.'" *State v. Glenn*, 3d Dist. Marion No. 9-19-64, 2021-Ohio-264, ¶ 20, quoting *Brady v. Maryland*, 373 U.S. 83, 87, 83 S.Ct. 1194 (1963). *See also State v. Canankamp*, 3d Dist. Auglaize No. 2-22-02, 2023-Ohio-43, ¶ 68 (noting that *Brady* applies to the discovery of evidence after trial). "In recognition thereof, Crim.R. 16(B)(5) requires the prosecutor to disclose '[a]ny evidence favorable to the defendant and material to guilt or punishment.'" *Glenn* at ¶ 20, quoting Crim.R. 16(B)(5). *See also State v. Darrah*, 12th Dist. Warren No. CA2006-09-109, 2007-Ohio-7080, ¶ 26 (noting that Crim.R. 16 "codifies the constitutional right of a defendant to receive from the prosecution" favorable evidence under *Brady*).

{¶38} "'However, "the principles of *Brady* do not apply unless the evidence is material to mitigation, exculpation, or impeachment."'" *Glenn* at ¶ 20, quoting *State v. Griffin*, 3d Dist. Allen No. 1-03-31, 2004-Ohio-287, ¶ 9, quoting *State v. Keene*, 81 Ohio St.3d 646, 650 (1998). "'Evidence is material if there is a "'reasonable probability'" that the result of the trial would have been different had the evidence been disclosed to the defense.'" *Id.* at ¶ 21, quoting *State v. Osie*, 140 Ohio St.3d 131, 2014-Ohio-2966, ¶ 153, quoting *Kyles v. Whitley*, 514 U.S. 419, 433, 115 S.Ct. 1555 (1995), quoting *United States v. Bagley*, 473 U.S. 667, 682, 105 S.Ct. 3375 (1985). "'"A 'reasonable probability' is probability sufficient to

undermine confidence in the outcome.""" *Id.*, quoting *Osie* at ¶ 153, quoting *State v. Johnston*, 39 Ohio St.3d 48 (1988), paragraph five of the syllabus.

**{¶39}** The failure to comply with Crim.R. 16 is governed by Crim.R. 16(L)(1) which provides, in its relevant part:

> If at any time during the course of the proceedings it is brought to the attention of the court that a party has failed to comply with this rule or with an order issued pursuant to this rule, the court may order such party to permit the discovery or inspection, grant a continuance, or prohibit the party from introducing in evidence the material not disclosed, or it may make such other order as it deems just under the circumstances.

Crim.R. 16(L)(1). "'[I]n determining the appropriate sanction, the trial court must make an inquiry into the circumstances of the discovery violation.'" *State v. Stiles*, 3d Dist. Allen No. 1-08-12, 2009-Ohio-89, ¶ 45, quoting *Engle* at ¶ 8, citing *Lakewood v. Papadelis*, 32 Ohio St.3d 1, 511 (1987), paragraph two of the syllabus. "Further, 'the trial court "must impose the least severe sanction that is consistent with the purpose of the rules of discovery."'" *Id.*, quoting *Engle* at ¶ 8, quoting *Papadelis* at paragraph two of the syllabus.

**{¶40}** The overriding purpose of Crim.R. 16 "is to prevent surprise and the secreting of evidence favorable to one party"—that is, the purpose of the rule "'is to produce a fair trial.'" *Engle* at ¶ 8, quoting *Papadelis* at 3. Thus, the failure to comply with Crim.R. 16 is error "only when there is a showing that (1) the prosecution's failure to disclose was willful, (2) disclosure of the information prior to trial would have aided the accused's defense, and (3) the accused suffered

prejudice." *State v. Jackson*, 107 Ohio St.3d 53, 2005-Ohio-5981, ¶ 131, citing *State v. Parson*, 6 Ohio St.3d 442, 445 (1983).

**{¶41}** "The trial court's decision regarding a Crim.R. 16 discovery sanction is reviewed under an abuse of discretion standard." *Stiles* at ¶ 45. Again, for this court to conclude that the trial court abused its discretion, the trial court's determination must be unreasonable, arbitrary, or unconscionable. *Adams*, 62 Ohio St.2d at 157-158.

**{¶42}** On appeal, the State contends that the trial court abused its discretion by dismissing the indictment in this case because any Crim.R. 16 discovery sanction under the circumstances is unreasonable, arbitrary, or unconscionable. Specifically, the State asserts that the trial court's decision is unreasonable, arbitrary, or unconscionable because it "took what [Gunther] indicated as true and went on to insinuate that the State was attempting to hide evidence and/or was providing [Gunther] with other documents" even though the State was not "hid[ing] anything since nothing was whited out in the documents, and no agreements were made with the [confidential sources]." (Appellant's Brief at 26).

**{¶43}** Gunther disputes the State's argument and contends that the trial court did not abuse its discretion by dismissing the indictment in this case because it "took incremental steps, including continuances and exclusions, until it could no [sic] other action but dismissal." (Appellee's Brief at 24). That is, Gunther advocates that "[t]he State forced the issue in its steadfast refusal to disclose information

related to benefits received by Mr. Ochs and Mr. Mahmoud despite being faced with written documentation evidencing the fact that the two were cooperating in consideration of pending charges." (*Id.*). Gunther further contends that the State's Crim.R. 16 discovery violations were willful since "the discovery violations had been ongoing, despite repeated court orders." (*Id.* at 21). According to Gunther, the undisclosed evidence would have aided his defense because Ochs, "[a]s the unindicted ringleader of the alleged criminal conduct, the impeachment of his credibility was crucial to [Gunther's] defense." (*Id.* at 22). Finally, Gunther argues that he was prejudiced by the State's untimely disclosure of this evidence because "he will be perpetually unable to use information of which he is unaware." (*Id.* at 23).

**{¶44}** Based on our review of the record, we conclude that the trial court abused its discretion by dismissing the indictment in this case because the trial court's Crim.R. 16 discovery sanction is unreasonable under the specific facts and circumstances presented. Indeed, even if we assume without deciding that the State willfully failed to comply with Crim.R. 16 (or any order issued by the trial court under Crim.R. 16), there is no Crim.R. 16 error on behalf of the State. *See State v. Williams*, 10th Dist. Franklin No. 16AP-350, 2018-Ohio-974, ¶ 22 (observing that all three factors must be present to demonstrate a Crim.R. 16 discovery violation). Critically, based on the facts presented, Gunther was not prejudiced in any meaningful way by the State's alleged belated disclosure. *See State v. Harris*, 10th

Dist. Franklin No. 21AP-678, 2023-Ohio-3994, ¶ 84 (resolving that Harris "was [not] prejudiced in any meaningful way by the [State's] belated disclosure"). *See also Parson*, 6 Ohio St.3d at 445 (analyzing that "there is nothing in the record below to indicate that the state's failure to disclose was a willful violation of Crim.R. 16 or anything other than a negligent omission on its part"). That is, contrary to Gunther's contention, the disclosure of the BCI Confidential Source packet materials would not have aided his defense. *See State v. Scoggins*, 4th Dist. Scioto No. 16CA3767, 2017-Ohio-8989, ¶ 41 (concluding that "disclosure of the document prior to trial would not have aided Scoggins's defense").

{¶45} Specifically, at the center of the trial court's decision dismissing the indictment in this case is the "[d]ebriefing" memoranda from Brad Doolittle ("Doolittle"), a special agent with Ohio's Bureau of Criminal Investigation ("BCI") assigned to the DEA Task Force in Toledo, addressed to his supervisor apprising (him) of the status of confidential sources—namely, Ochs and Mahmoud. Each document identically states that "[t]he [confidential source] has pending charges and is providing services and information in consideration of those charges." (Doc. No. 115). According to the State, "this is standard form language used by [Doolittle] in his [confidential source] packet forms." (Appellant's Brief at 25). Nevertheless, regardless whether the memoranda reflect "standard form language," the BCI Confidential Source packet materials constitute tenuous impeachment evidence at best. *See, e.g.*, *State v. Dearing*, 8th Dist. Cuyahoga No. 78710, 2001 WL 957690,

*5 (Aug. 23, 2001). In other words, the memoranda are *not* evidence of an agreement between the State and Ochs and Mahmoud in exchange for their cooperation. That is, while the BCI Confidential Source packet materials evidence an understanding between Doolittle and Ochs and Mahmoud, this understanding does not evidence the existence of any specific terms of an agreement between the State and Ochs and Mahmoud. Critically, the impeachment value of the documents is limited since *only* the prosecutor is authorized to agree to the specific terms of such an agreement.

**{¶46}** Indeed, "'R.C. 309.08(A) expressly grants the county prosecuting attorney the authority to "prosecute, on behalf of the state, all complaints, suits, and controversies in which the state is a party."'" *State v. McPherson*, 4th Dist. Washington No. 18CA4, 2019-Ohio-3482, ¶ 6, quoting *State v. Heinz*, 146 Ohio St.3d 374, 2016-Ohio-2814, ¶ 16, quoting R.C. 309.08(A). *See also State v. Pittman*, 6th Dist. Lucas No. L-15-1043, 2016-Ohio-617, ¶ 10 ("The prosecutor has the sole discretion to determine whether to initiate criminal charges."). "A county prosecuting attorney is 'the only person authorized to enter into a plea agreement on behalf of the state with respect to crimes committed wholly' in the county in which the prosecuting attorney has been elected." *McPherson* at ¶ 6, quoting *State v. Billingsley*, 133 Ohio St.3d 277, 2012-Ohio-4307, ¶ 38. "Likewise, a county prosecuting attorney has authority to enter into non-prosecution agreements which 'arises, in part, from the discretion a prosecutor has in initiating a criminal

prosecution.'" *Id.*, quoting *State v. Moore*, 7th Dist. Mahoning No. 06-MA-15, 2008-Ohio-1190, ¶ 61.

**{¶47}** In general, law enforcement does *not* have the authority to enter into a non-prosecution agreement. *Pittman* at ¶ 10. Specifically, "non-prosecution agreements are governed by contract law," and contract law dictates that "an agent's authority to contract on behalf of its principal is ordinarily limited to the scope of the authority granted by the principal." *McPherson* at ¶ 8, quoting *State v. Parris*, 6th Dist. Ottawa No. OT-14-015, 2014-Ohio-4863, ¶ 12 and *Billingsley* at ¶ 26. Importantly, "'an agent cannot through [the agent's] own words and actions create apparent authority to bind a principal where there is no evidence that the principal permitted the agent to act as if [the agent] had authority.'" *Id.*, quoting *Billingsley* at ¶ 39.

**{¶48}** Decisively, there is no evidence in the record that the prosecuting attorney authorized Doolittle to negotiate any agreement with Ochs or Mahmoud on behalf of the State. *See McPherson* at ¶ 8 (analyzing that there was "no evidence that the Washington County prosecuting attorney permitted [law enforcement] to act as if they had authority to enter a non-prosecution agreement"). Consequently, notwithstanding the "standard form language" conveyed in the memoranda, Doolittle lacked authority to enter any such agreement on behalf of the Henry County prosecutor. *See id.* at ¶ 10 (concluding "that even if members of law enforcement promised McPherson immunity from prosecution in exchange for

information, they lacked authority to enter into a non-prosecution agreement on behalf of the Washington County Prosecutor"); *Pittman* at ¶ 10 (resolving that law enforcement was "without authority to make decisions regarding whether to prosecute Pittman" and that "even if Pittman had done what the officers asked of him, there was no enforceable non-prosecution agreement"). Because the memoranda are not evidence of any agreement between the State and Ochs or Mahmoud, any belated disclosure of the evidence did not prejudice Gunther. *See State v. Sinbondit*, 6th Dist. Fulton No. F-94-028, 1995 WL 112904, *3 (Mar. 17, 1995).

{¶49} Furthermore, the record reflects that the evidence was available to Gunther. *See State v. Collins*, 8th Dist. Cuyahoga No. 108878, 2020-Ohio-4136, ¶ 37 (analyzing whether Collins was prejudiced by the State Crim.R. 16 violation by considering that Collins knew that the evidence existed). Importantly, at the October 31, 2022 hearing, Doolittle testified that, even though BCI did not provide BCI Confidential Source packet materials to the State for the protection of the confidential sources, BCI made the packet materials available to Gunther for his inspection. Even though Doolittle testified that BCI offered Gunther "the opportunity to come review them * * * so it [did not] get distributed beyond the scope," Gunther did not seek to review those materials. (Oct. 31, 2022 Tr. at 43).

{¶50} Moreover, the record reflects that the trial court "ordered that the State make the Confidential Sources available for interview outside the presence of the

agents on or before October 10, 2022" to permit Gunther "'a one-time opportunity to have an investigator conduct a Zoom or telephonic interview.'" (Doc. No. 151, quoting Doc. No. 72). Critically, the record further reflects that Gunther did *not* interview Ochs or Mahmoud. *See Scoggins*, 2017-Ohio-8989, at ¶ 41 (noting that Scoggins was not prejudiced by any discovery violation because "[t]he State provided Scoggins with [the State's witness's] name and contact information well in advance of trial" and that "[t]he defense contacted [the witness] and conducted its own pretrial interview").

**{¶51}** Encompassing the memoranda, Gunther likewise complained that he received discovery that included improperly redacted evidence—that is, he alleged that he received evidence that had been redacted using white out. In response to these allegations, the State explained that Doolittle "took a previously filled out establishment packet that was no longer needed and whited out the filled-out portions that contained the previous Confidential Sources [sic] information," then "made multiple copies of the 'erased' forms and used those forms for establishment packages for future Confidential Sources, which include Ochs and Mahmoud." (Doc. No. 151). Critically, the State asserted that "[n]one of the content of the forms was altered, erased, or manipulated as alleged by [Gunther]." (*Id.*). Indeed, our review of the record reveals that, although clumsy, the redacted forms do not reflect any concealed evidence.

{¶52} For these reasons, we conclude that any failure by the State to comply with Crim.R. 16 as to disclosure of the BCI Confidential Source packet materials does not rise to the level of an error since Gunther was not prejudiced by the delayed disclosure. *See State v. Cheesbro*, 4th Dist. Adams No. 95 CA 591, 1996 WL 107435, \*4 (Mar. 4, 1996) ("The trial court's decision to sanction appellant by dismissing the charge was too severe given the nature of the infraction and the nature of the evidence at issue."). Thus, since we conclude that there was no Crim.R. 16 error, the trial court unreasonably imposed a discovery-violation sanction. Consequently, we conclude that the trial court abused its discretion by dismissing the indictment in this case. *See State v. Zirkle*, 4th Dist. Meigs No. 95 CA 21, 1997 WL 567938, \*4 (Aug. 27, 1997); *State v. Horton*, 90 Ohio App.3d 157, 159-161 (10th Dist.1993).

{¶53} Accordingly, the State's assignment of error is sustained.

{¶54} Having found error prejudicial to the appellant herein in the particulars assigned and argued in its assignment of error, we reverse the judgment of the trial court and remand for further proceedings.

*Judgment Reversed*
*and Cause Remanded*

**WILLAMOWSKI, P.J. and MILLER, J., concur.**

**/hls**