[Cite as *State v. Wagner*, 2025-Ohio-707.]

# IN THE COURT OF APPEALS OF OHIO
## ELEVENTH APPELLATE DISTRICT
## LAKE COUNTY

| | |
|---|---|
| STATE OF OHIO, | CASE NO. 2021-L-101 |
| Plaintiff-Appellee, | |
| - v - | Criminal Appeal from the Court of Common Pleas |
| MARK R. WAGNER, JR., | |
| Defendant-Appellant. | Trial Court No. 2020 CR 001117 |

**O P I N I O N**

Decided: March 3, 2025
Judgment: Affirmed

*Charles E. Coulson*, Lake County Prosecutor, and *Kristi L. Winner*, Assistant Prosecutor, Lake County Administration Building, 105 Main Street, P.O. Box 490, Painesville, OH 44077 (For Plaintiff-Appellee).

*Brandon J. Henderson*, *Justin M. Weatherly*, and *Calvin Freas*, Henderson, Mokhtari & Weatherly Co., LPA, 1231 Superior Avenue, E., Cleveland, OH 44114 (For Defendant-Appellant).

MATT LYNCH, J.

{¶1} Defendant-appellant, Mark R. Wagner, Jr., appealed from his convictions for Felonious Assault, Discharge of a Firearm on or Near Prohibited Premises, Improperly Handling Firearms in a Motor Vehicle, and Falsification in the Lake County Court of Common Pleas. This matter is presently before the court on remand from the Ohio Supreme Court for consideration of the issue previously found to be moot. For the following reasons, we affirm the judgment of the lower court on the second assignment of error.

{¶2} On January 29, 2021, the Lake County Grand Jury issued an Indictment, charging Wagner with Felonious Assault (Count One), a felony of the second degree, in violation of R.C. 2903.11(A)(2); Discharge of a Firearm on or Near Prohibited Premises (Count Two), a felony of the third degree, in violation of R.C. 2923.162(A)(3); Improperly Handling Firearms in a Motor Vehicle (Count Three), a felony of the fourth degree, in violation of R.C. 2923.16(A); and Falsification (Count Four), a misdemeanor of the first degree, in violation of R.C. 2921.13(A)(3). Counts One and Two also had firearm specifications pursuant to R.C. 2941.145 and .146.

{¶3} A jury trial was held in July 2021. The following pertinent testimony and evidence were presented:

{¶4} On September 22, 2020, Solomon Ford was driving on I-271 North and encountered another vehicle in front of him, driven by Wagner. According to Ford's testimony, Wagner was driving aggressively. Ford testified that Wagner moved into the right lane while Ford remained in the fast lane. When Ford looked to the right, he observed Wagner with a gun and then saw and heard two gun shots. Ford allowed police to access his vehicle, which had two bullet holes, and officers subsequently swabbed the inside for gunshot residue. At this point in the testimony, defense counsel indicated to the court that he was unaware a swab had been taken of Ford's car. The State indicated that it had included a reference to the kit on the index of discovery provided to the defense.

{¶5} Officer Salvatore Continenza of the Willoughby Hills Police Department spoke with Wagner, who came to the department after the shooting. According to Continenza, Wagner stated that Ford fired at him first but Wagner did "not remember if he [Wagner] fired or not."

2

{¶6} Patrolman David Cook of the Wickliffe Police Department observed two bullet holes in the passenger side of Ford's vehicle and found a bullet on the rear passenger floorboard.

{¶7} Lieutenant Manus McCaffery of the Wickliffe Police Department searched Wagner's vehicle and recovered two shell casings. He swabbed the interior of Ford's vehicle for gunshot residue on July 28. He testified that this was not sent into a laboratory because "there is no laboratory in the State of Ohio that will test them for gunshot residue" and labs would only test gunshot residue found on a person.

{¶8} As to his supplemental report that discussed swabbing Ford's vehicle for gunshot residue, McCaffery testified that he personally gave a copy to the prosecutor for the first time on the day preceding his testimony, the first day of trial. He was unaware of when the prosecutor first received the report but he gave them a copy because it had been indicated to him that they did not have his supplement.

{¶9} Detective Don Dondrea of the Wickliffe Police Department examined Wagner's vehicle and did not observe bullet holes. He swabbed the vehicle for gunshot residue but, after speaking with Ohio BCI, he was informed that they would only test residue from hands.

{¶10} Wagner testified that Ford tried to merge his vehicle into him while driving, which resulted in Wagner "brake checking" him. After Ford tailgated him, Wagner moved to the right lane while Ford remained in the left lane. Subsequently, Wagner observed Ford holding a gun. Wagner reached for a firearm in his vehicle, heard a shot and saw a flash, and then fired his gun twice. He told Continenza that he "wasn't sure if I shot him. But I fired." He testified that he fired the shots in self-defense.

3

{¶11} The jury found Wagner guilty of all counts as charged in the indictment. At the sentencing hearing, the court merged Counts Two and Three with Count One. It ordered Wagner to serve a term of three years to four and a half years in prison on Count One, three years for the first firearm specification, and five years on the second, all to be served consecutively. Wagner was ordered to a concurrent term of 180 days for Count Four.

{¶12} Wagner appealed to this court, assigning two errors. On appeal, this court reversed the convictions and remanded for the trial court to amend its jury instruction. *State v. Wagner*, 2022-Ohio-4051, ¶ 28 (11th Dist.). The remaining assignment was found moot. Wagner appealed to the Ohio Supreme Court, which reversed on the authority of *State v. Miree*, 2024-Ohio-5714, and remanded for this court to "address the mooted assignment of error." *State v. Wagner*, 2024-Ohio-5939, ¶ 1. We now address the second assignment of error.

{¶13} Wagner raises the following as his second assignment of error: "The Defendant was reversibly prejudiced when crucial evidence that was directly related to the cross-examination of the State's primary witness—and whose cross-examination had already been completed—was not given to his defense until one day into the three-day trial even though the Defendant had triggered Crim.R. 16 by demanding discovery months previously."

{¶14} Wagner argues that a violation of Crim.R. 16 occurred when the prosecution failed to disclose a report from a detective showing that he performed a gunshot residue swab of Ford's vehicle. He contends that the defense was unaware this swab had been conducted, the State knew of the contents of the report, and counsel was unable to

4

adequately prepare to cross-examine Ford or seek to have the swabs tested to determine whether Ford fired a gun.

**{¶15}** "Failure to disclose exculpatory evidence, when discovered *during* trial, is governed by Crim.R. 16." (Emphasis sic.) *State v. Albanese*, 2006-Ohio-4819, ¶ 46 (11th Dist.). "Crim.R. 16 requires that parties provide discovery when such a request is made" in order to prevent surprise and produce a fair trial. *State v. Kratochvill*, 2020-Ohio-7000, ¶ 41 (11th Dist.); *Lakewood v. Papadelis*, 32 Ohio St.3d 1, 3 (1987).

**{¶16}** Crim.R. 16(B)(5) requires that the prosecutor, upon written demand, provide copies of "[a]ny evidence favorable to the defendant and material to guilt or punishment." "Prosecutorial violations of Crim.R. 16 are reversible only when there is a showing that (1) the prosecution's failure to disclose was a willful violation of the rule, (2) foreknowledge of the information would have benefited the accused in the preparation of his defense, and (3) the accused suffered some prejudicial effect." *State v. Joseph*, 73 Ohio St.3d 450, 458 (1995).

**{¶17}** In the present matter, there is no question that a supplement to the police report prepared by Lieutenant McCaffery in relation to the swabbing of Ford's vehicle was not provided to the defense until the end of the first day of trial. The State argues that there can be no prejudice from receiving the report at this juncture since the defense had already been provided discovery relating to the gunshot residue test. Defense counsel denies having such knowledge and contends that he first learned of the gunshot residue test of Ford's vehicle during Ford's cross-examination.

**{¶18}** Pursuant to the State's argument, made in its brief and before the trial court, on July 13, 2021, supplemental discovery of the State's evidence log which "listed two

5

gunshot residue kits," was sent to the defense and downloaded on July 14. The State also argued that on July 15, it provided discovery containing the Wickliffe Police Department's property log, which listed two separate items as gunshot residue kits, and stated in the note section that they were "taken from Honda Pilot [Ford's vehicle]." The record before this court includes notices of supplemental discovery from those dates, with the index from July 13 stating that included in the evidence package was "EVIDENCE IN FROM WICKLIFFE PD 7-13-21," and the index from July 15 stating that included in the package was "Wickliffe PD Property Log." However, the evidence referenced from the Wickliffe Police Department and the property log were not made part of the record before this court.

{¶19} Even presuming the items addressed above were not provided to Wagner's counsel or did not adequately apprise counsel of the existence of the gunshot residue swabs, in order to demonstrate a prosecutorial violation under Crim.R. 16, it is necessary to show a willful violation by the prosecution. We do not find a willful violation. The State argued extensively that it had provided notice of the gunshot residue kits as noted above. As to the police report supplement at issue, the State indicated at the beginning of the second day of trial that it "was never given to the prosecutor," that it was received during the first day of trial and as soon as it was received, the prosecutor walked down the hallway and handed it to the defense. McCaffery testified that he personally had not given the report to the State until the first day of trial, although he could not speak to whether the prosecution had received the report prior to that date. While this delay in receiving and providing the supplement to the police report is not ideal, it does not follow that the prosecutor committed a willful violation. *See State v. Summers*, 2012-Ohio-4457, ¶ 30

6

(11th Dist.) (where the prosecution disclosed evidence immediately upon being made aware the defense did not have it and asserted on the record that this was unintentional, no willful violation was found). We observe that "all three factors must be present to demonstrate a Crim.R. 16 discovery violation" so Wagner's argument fails on the absence of this ground alone. *State v. Addiego*, 2024-Ohio-1849, ¶ 40 (3d Dist.), citing *State v. Williams*, 2018-Ohio-974, ¶ 22 (10th Dist.).

{¶20} In his reply brief, Wagner cites *State v. South*, 2005-Ohio-2152 (9th Dist.), for the proposition that "[a]ny discoverable material in the police's possession is considered to be in the possession of the state and must therefore be given to the defendant." In *South*, the court took issue with the fact that the State had a police video in its possession but refused to provide a copy to the defendant, an issue which is not present here. *Id.* at ¶ 11. *South* does not contain the statement of law quoted by Wagner. However, this court held the same in *State v. Perry,* 80 Ohio App.3d 78, 85 (11th Dist. 1992). While it may be accurate that the State must turn over evidence that the police possess, it does not follow that the prosecutor's lack of awareness of such evidence and accompanying failure to timely disclose it constitutes a willful violation of Crim.R. 16. It has been held that where evidence is not provided to a defendant as the result of a mistake or misunderstanding, this does not constitute a willful violation for the purposes of Crim.R. 16. *Summers* at ¶ 30; *State v. Smith*, 2008-Ohio-6998, ¶ 55 (11th Dist.).

{¶21} Additionally, "[i]t has been held that if defense counsel is unprepared to proceed due to the State's failure to disclose evidence, it should seek a continuance in order to remedy the problem" rather than another remedy such as dismissal. *Summers* at ¶ 31, citing *State v. Eckliffe*, 2002-Ohio-7135, ¶ 18 (11th Dist.); *see also State v.*

7

*Meyers*, 2015-Ohio-4238, ¶ 27 (11th Dist.) (concluding that a court properly allowed admission of testimony under Crim.R. 16 where defense counsel did not seek a continuance but sought exclusion of the evidence). Here, the defense could have requested a continuance to seek potential testing of gunshot residue or to prepare additional examination and recall witnesses that had already testified. Instead, defense counsel stated that he believed not having the report impacted his cross-examination of Ford and made him "look . . . like an idiot," that he wanted to put it on the record, he was "perturbed," and wanted to have more discussion as to whether there should be "some type of instruction or something to the jurors," although he recommended no specific instruction to be given. No continuance was requested at any time. Nonetheless, counsel used cross-examination to extensively demonstrate that the police failed to submit gunshot residue for testing in support of Wagner's claim of self-defense, demonstrating that he may have believed it to be a more effective strategy than seeking a continuance to take further action to test for gunshot residue in Ford's vehicle. *See State v. Salinas*, 2010-Ohio-4738, ¶ 24 (10th Dist.) (observing that a failure to seek a continuance is relevant in determining lack of prejudice).

{¶22} For the foregoing reasons, we find that the second assignment of error which we were to consider on remand is without merit. We affirm Wagner's convictions in the Lake County Court of Common Pleas.

ROBERT J. PATTON, P.J.,

EUGENE A. LUCCI, J.,

concur.

8

Case No. 2021-L-101